UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DANNY  BIBLE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:18-CV-1893 |
| | § | |
| LORIE  DAVIS-DIRECTOR TDCJ-CID, *et al*, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM AND ORDER</u>

The State of Texas plans on executing sixty-six-year-old Danny Paul Bible on June 27, 2018.  Texas will carry out Bible's execution by the only statutorily authorized means available, lethal injection.  On June 8, 2018, Bible filed a Complaint for Injunctive and Declaratory Relief Pursuant to 42 U.S.C. § 1983.  (Dkt. No. 1).  Bible argues that the planned execution will violate his constitutional rights because various health concerns make it unlikely that a suitable vein can be found, and he will otherwise experience discomfort and pain.  Also, Bible argues that the Constitution guarantees a right to access the courts as the State carries out his sentence.

On June 10, 2018, Bible filed a Motion for a Stay of Execution, a Temporary Restraining Order, and a Preliminary Injunction.  (Dkt. No. 3).  Bible also moves for discovery.  (Dkt. No. 8).  The defendants oppose any relief.

For the reasons discussed below, the Court finds that Bible has not shown an entitlement to a stay of execution, temporary restraining order, or preliminary injunction.  The Court will dismiss this case.  The Court sets out the reasons for this ruling below.

### BACKGROUND

Bible killed Inez Deaton in 1979.  The physical evidence suggested that Bible had

sexually assaulted the victim, stabbed her eleven times with an ice pick, and then dragged her corpse to a bayou. Over the next two decades, Bible committed child sexual assaults, rapes, and murders. Bible confessed to murdering the victim in this case after his arrest for a separate violent sexual assault. In 2003, a Texas jury convicted Bible of capital murder for killing Ms. Deaton during an aggravated rape. He was sentenced to death.

After Bible unsuccessfully availed himself of state court remedies, this Court denied federal habeas relief in 2014. *Bible v. Stephens*, 4:13-cv-200 (S.D. Tex. 2014). The Court of Appeals for the Fifth Circuit subsequently denied a Certificate of Appealability, *Bible v. Stephens*, 640 F. App'x 350 (5th Cir. 2016), and the United States Supreme Court denied certiorari review, *Bible v. Davis*, ___ U.S. ___, 137 S. Ct. 328 (2016).

On March 19, 2018, the 351st District Court of Harris County, Texas entered an Execution Order authorizing the Texas Department of Criminal Justice to carry out Bible's execution "by intravenous injection of a substance or substances in a lethal quantity sufficient to cause . . . death." Texas' execution protocol establishes that the procedure will be carried out by a "drug team" that "shall have at least one medically trained individual. Each medically trained individual shall at least be certified or licensed as a certified medical assistant, phlebotomist, emergency medical technician, paramedic, or military corpsman." (Dkt. 1, Ex. C at 7).[1] The drug team will prepare a syringe with "100 milliliters of solution containing 5 grams of Pentobarbital." (Dkt. 1, Ex. C at 8).[2] "Pentobarbital is an intermediate-acting barbiturate. . . .

---

[1] Bible complains that the defendants do not "assert that the team members have the qualifications or expertise to establish vein access on patients with severely compromised veins." (Dkt. No. 12 at 1). Bible, however, does not explain how the Texas protocol does not provide for sufficient expertise to carry out executions. Texas has executed offenders of Bible's age and limited mobility before. (Dkt. No. 11 at 21). Because of the details in Texas' protocol, no discovery of specific information about the execution team is necessary.

[2] A Texas statute provides that the executioner will carry out a capital inmate's sentence "by intravenous injection of a substance or substances in a lethal quantity sufficient to cause death and until such convict is dead." TEX. CODE CRIM. PRO. art. 43.14.

Two gram doses of pentobarbital are fatal, the five gram doses that Texas uses are overwhelmingly so." *Whitaker v. Livingston*, 2016 WL 3199532, at *1 (S.D. Tex. 2016).

After escorting Bible from a holding cell, he will be "secured to the gurney." (Dkt. 1, Ex. C at 9). The protocol provides to the injection of the pentobarbital:

> A medically trained individual shall insert intravenous (IV) catheters into a suitable vein of the condemned person. If a suitable vein cannot be discovered in an arm, the medically trained individual shall substitute a suitable vein in another part of the body, but shall not use a "cut-down" procedure to access a suitable vein. The medically trained individual shall take as much time as is needed to properly insert the IV lines. The medically trained individual shall connect an IV administration set, and start a normal saline solution to flow at a slow rate through one of the lines. The second line is started as a precaution and is used only if a potential problem is identified with the primary line. The [Texas Department of Criminal Justice - Correctional Institutions Division] Director or designee, the Huntsville Unit Warden or designee, and the medically trained individual shall observe the IV to ensure that the rate of flow is uninterrupted.

(Dkt. 1, Ex. C at 9). Witnesses will be allowed into a "appropriate viewing area ONLY AFTER the Saline IV has been started and is running properly . . . ." (Dkt. 1, Ex. C at 9). At that time, the "Huntsville Unit Warden or designee shall instruct the drug team to induce, by syringe, substances necessary to cause death." (Dkt. 1, Ex. C at 9). Then, "[t]he flow of normal saline through the IV shall be discontinued" and the "lethal dose of Pentobarbital shall be commenced." (Dkt. 1, Ex. C at 9).

Numerous cases have unsuccessfully challenged Texas' use of pentobarbital, most recently because Texas now uses a compounded form of the drug. *See Whitaker v. Collier*, 862 F.3d 490 (5th Cir. 2017); *Wood v. Collier*, 678 F. App'x 248 (5th Cir. 2017); *Sells v. Livingston*, 750 F.3d 478 (5th Cir. 2014). The instant case does not challenge the use of pentobarbital itself, but only the possibility that pain will result from the execution process. The gravamen of the instant lawsuit is that "a galaxy of medical issues" will make it "very difficult — if not outright impossible — even for the most experienced and trained medical professional" to establish

peripheral IV access.  (Dkt. No. 1, 35).  Bible's complaint lists a "multitude of deteriorating

medical conditions" he suffers from, including:

> heart failure, coronary artery disease, chronic venous insufficiency, chronic
> obstructive pulmonary disease, Parkinson's disease, diabetes, hypertension, and
> other systemic diseases.  As a result of these systemic diseases, his blood does not
> flow back properly to the heart, causing edema and swelling; his veins are
> damaged and fragile; and scars from his previous surgeries obscure vein access
> sites.

(Dkt. No. 1 at 1).  With that predicate, Bible makes several assumptions: (1) "attempts to place

IV's in Mr. Bible would be futile and likely result in significant pain and suffering"; (2) if the IV

is inserted in "a small peripheral vein" he will experience "immense pain" and his "veins may

blow"; (3) strapping him to a gurney will "cause shortness of breath that worsens when he is

lying down" leaving him gasping for air and choking for the duration of attempts to obtain IV

access"; and (4) various health concerns will cause complications after the lethal injection

begins.  (Dkt. No. 1 at 1-2).  Based on those predicates, Bible's complaint raises four grounds for

relief:

1. Because of Bible's medical conditions and compromised vein access, implementation of Texas' lethal injection protocol will result in an Eighth Amendment violation.

2. Any attempt to carry out Bible's sentence will result in a lingering death or unsuccessful execution.

3. Texas officials have manifested deliberate indifference to Bible's medical needs, giving rise to circumstances potentially causing severe pain in any execution attempt.

4. Texas protocol violates Bible's right to access the courts.

(Dkt. No. 1).  Bible has filed a Motion for a Stay of Execution, a Temporary Restraining Order,

and a Preliminary Injunction.  (Dkt. No. 3).  Bible also seeks discovery relating to his arguments.

(Dkt. No. 8).

The defendants have filed a response in opposition to Bible's request to stay his execution. (Dkt. No. 11)  The defendants argue that this action is dilatory, filed years after the finality of Bible's conviction and intended only to delay the execution of his sentence. The defendants argue that the lateness of Bible's filing lessens the credibility of his allegations. In a related argument, the defendants argue that Bible's claims are barred under the relevant statute of limitations.  The defendants also argue that Bible's claims are speculative, primarily because medical experts have been able to gain access to Bible's veins when drawing blood.

**STAY-OF-EXECUTION STANDARD AND BIBLE'S DELAY IN BRINGING SUIT**

Bible asks the Court to stay his execution, issue a preliminary injunction, or issue a temporary restraining order.  Bible's civil-rights complaint can only proceed if the Court issues a stay of execution. A federal court has inherent discretion when deciding whether to stay an execution.  *See Nken v. Holder*, 556 U.S. 418, 434 (2009); 28 U.S.C. § 2251(a)(1).  "[A] stay of execution is an equitable remedy, and an inmate is not entitled to a stay of execution as a matter of course."  *Hill v. McDonough*, 547 U.S. 573, 583-84 (2006).  In deciding whether to issue a stay of execution, a court must consider: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other party interested in the proceeding; and (4) where the public interest lies.  *See Nken*, 556 U.S. at 425-26.[3]  "[I]nmates seeking time to challenge the manner in which the State plans to execute them

---

[3]    When inmates file motions requesting a preliminary injunction, a TRO, and a stay of execution, courts generally consider all the requests under either the preliminary-injunction or stay-of-execution standard. *See Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016); *Trottie v. Livingston*, 766 F.3d 450, 451 (5th Cir. 2014); *Sells v. Livingston*, 561 F. App'x 342, 343 (5th Cir. 2014).  The requirements for a preliminary injunction are substantially similar to those for a stay of execution.  *See Sells*, 561 F. App'x at 344.  The Court would deny a preliminary injunction for the same reasons it will not stay Bible's execution.

must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Hill*, 547 U.S at 584.[4]

Bible's pending motion depends on the operation of equity in his behalf. *See Hill*, 547 U.S. at 584. Before turning to his specific claims, the Court expresses concerns about the timing of Bible's lawsuit. In the balance of equity, "dilatory behavior" may weigh heavily against a plaintiff. *Ramirez v. McCraw*, 715 F. App'x 347, 351 (5th Cir. 2017). Bible bases his claims on health conditions that he has suffered from for an extended period of time. While he argues that his health has deteriorated in the past year, Bible bases his complaint on a host of medical concerns that have, apparently, been present for years.

Bible's complaint does not identify any medical issue that has suddenly arisen, but he chronicles years of health problems. His expert describes how many of his medical issues are linked to a TDCJ van accident in 2003, though his "physical state started rapidly deteriorating about a year ago." (Dkt. No. 1, Ex. B p. 43).[5] On state habeas review, Bible claimed that the State should not execute him because he no longer poses a societal danger. In doing so, Bible manifested awareness that his health concerns could impact his execution: "This case holds the real potential . . . of an ironic and grotesque spectacle unfolding in the Texas death chamber: an elderly man confined to a wheelchair, unable to use his legs or arms, hoisted out of his wheelchair and assisted onto the death gurney by prison guards and then being executed."

---

[4]    The Fifth Circuit has said that, "[i]n a capital case, the possibility of irreparable injury weighs heavily in the movant's favor." *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982). But the United States Supreme Court has ruled that an applicant is not entitled to a stay "[as] a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken*, 556 U.S. at 427 (internal quotation marks omitted). The death penalty is irreversible, but there must come a time when the legal issues "have been sufficiently litigated and re-litigated so that the law must be allowed to run its course." *O'Bryan*, 691 F.2d at 708 (quoting *Evans v. Bennett*, 440 U.S. 1301, 1306 (1979)).

[5]    The defendants argue that Texas' two-year statute of limitations for personal injury actions bars all of Bible's claims. As discussed below, the Court agrees that the statute of limitations bars any claim based on Texas protocol and those asserting his right to access the Court. At this stage, however, it is not clear when Bible's as-applied challenge became ripe, whether at the time that Texas adopted its current lethal-injection protocol or when concerns arose about Bible's physical condition that would impact his execution.

Bible's federal habeas petition raised issues relating to his health, some of which are reflected in the current lawsuit. Then, the pleadings described Bible as "seriously ill and severely disabled." (*Bible v. Thaler*, 4:13-cv-200, Dkt. No. 5 at 23).

Bible's age, weight, and other factors that give rise to this lawsuit are not circumstances of recent vintage. Doctors diagnosed Bible with heart problems many years ago and with Parkinson's Disease two years ago. Doctors observed problems with Bible's blood circulation, such as chronic venous insufficiency, a year ago. Bible has not identified any particular health concern that has not been present for some time, and more especially one that would impede the execution team's ability to access a vein successfully. Bible does not explain why he waited to file this lawsuit if his health has been in decline for a year. Even assuming that his health has deteriorated in the past year, Bible could have brought suit long before his execution became imminent.

Nothing prevented Bible from bringing suit to challenge his execution long before now, and in a manner that would have allowed for full factual development and deliberate consideration. The State of Texas set Bible's execution on March 19, 2018. "Bible even acknowledges that his claims were (at the very least) ripe when his execution was set, yet he delayed again – waiting until nineteen days before the execution itself to finally initiate a suit." (Dkt. No. 11 at 32) (footnote omitted). Even assuming that Bible's claims did not become ripe until that time, he waited until three weeks before the execution date before filing this civil lawsuit and only eleven days before his execution to seek extensive discovery. Bible bases his lawsuit on observations by an expert who did not even examine Bible until May 22, 2018 – more than two months after the State set his execution date. Still, Bible asks for expedited discovery and assumes that the Court will hold a hearing.

Any urgency is a matter of Bible's own creation. "Bible's delay in bringing this suit – without which the Court and the Defendants could have considered and litigated the matter without the rush and pressure of a pending execution date – must be fairly held against Bible." (Dkt. No. 11 at 33). The filing of a lawsuit nineteen days before an execution based on long-standing health concerns – especially when accompanied by a discovery motion based on an expedited timetable only days before his execution – lessens the credibility of the plaintiff's arguments. [6]

In contrast, a jury's answer to Texas' special issues resulted in Bible's death sentence many years ago. Bible raises concerns about Texas' execution protocol, though the State has used that method of execution for many years. Bible has known for fifteen years that he would die by lethal injection, "yet has chosen only this moment, with his execution imminent, to challenge a procedure for lethal injection that the state has used for an even longer period of time." *Harris v. Johnson*, 376 F.3d 414, 417 (5th Cir. 2004). The Supreme Court has observed that "a number of federal courts have invoked their equitable powers to dismiss suits they saw as speculative or filed too late in the day." *Hill*, 547 U.S. at 584. The Supreme Court has recognized the "significant" problems created when death-row inmates delay in filing their § 1983 suits, stating that "federal courts can and should protect States from dilatory or speculative suits." *Id*. at 585. The Court finds that Bible's unnecessary delay in filing suit and seeking equitable relief is an independent basis on which the Court will deny relief.

---

[6] "A long delay by plaintiff after learning of the threatened harm also may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction." CHARLES ALAN WRIGHT & ARTHUR R. MILLER, ET AL., 11A FEDERAL PRACTICE & PROCEDURE § 2948.1 (3d ed., April 2017 update).

**ANALYSIS**

All of Bible's arguments hinge on his allegation that no suitable vein will be found and that protracted efforts to find a vein, possibly unsuccessfully, will cause him pain of an unconstitutional magnitude. *See Whitaker v. Collier*, 862 F.3d 490, 497 (5th Cir. 2017) (similarly recognizing that "the plaintiffs rely on several constitutional amendments, but the core of their suit is a challenge to the method of execution under the Eighth Amendment"). Whether cast as an as-applied challenge, a claim of deliberate indifference, or a complaint of future denial of access to courts, each of Bible claims turn on him showing that he will suffer severely and needlessly when medical professionals attempt to insert an IV. With the short time remaining before his execution, the Court can only give effect to Bible's complaint by staying his execution. Bible's case, therefore, hinges on him meeting the stay-of-execution standard relating to the IV insertion, and specifically showing a strong likelihood that he could succeed in showing that any execution attempt will cause unconstitutional levels of pain. As discussed below, Bible cannot meet this demanding showing.

## I.    The Eighth Amendment

All Bible's complaints hinge on proving an Eighth Amendment violation. The Supreme Court in *Baze v. Rees*, 553 U.S. 35 (2008) and *Glossip v. Gross*, ___ U.S. ___, 135 S. Ct. 2726 (2015), established two requirements that govern an Eighth Amendment method-of-execution challenge, both of which are conditioned by modifiers that are crucial to an inmate's claim. First, the inmate must "establish that the [execution] method presents a risk that is *sure or very likely* to cause serious illness and needless suffering, and give rise to sufficiently *imminent dangers.*" *Glossip*, 135 S. Ct. at 2737 (emphasis in original) (quoting *Baze*, 553 U.S. at 50).[7]

---

[7]    Bible questions whether a plaintiff in an as-applied method-of-execution challenge must meet the second prong of the *Baze/Glossip* standard, but does not dispute that he must meet the first prong.

"[T]here must be a *substantial* risk of *serious* harm, an *objectively intolerable* risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment." *Glossip*, 135 S.Ct. at 2737 (quoting *Baze*, 553 U.S. at 50). "These are substantial hurdles, necessarily so." *Wood v. Collier*, 836 F.3d 534, 540 (5th Cir. 2016). Second, an inmate must "identify an alternative that is feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain." *Glossip*, 135 S. Ct. at 2737 (citing *Baze*, 553 U.S. at 52).

### A.     IV Access and Lethal Injection

As his first argument, Bible argues that "[a]ttempting to obtain access to [his] veins will result in needless pain and suffering" thus "present[ing] a substantial risk of serious harm from repeated needle punctures . . . ." (Doc. No. 3 at 1).[8]  The pleadings describe sixty-six-year-old Bible as "elderly and frail." (Doc. No. 3 at 9). Bible fears that he will experience a botched or aborted execution because he suffers from a "galaxy of medical issues," but most particularly because he "does not have any sites on his body suitable for peripheral IV infusion." (Doc. No. 3 at 9-10). Bible describes his "entire cardiovascular system" as "compromised and under stress from heart failure, coronary artery disease, diabetes, and hypertension" which renders his veins fragile and not visible, a condition compounded by his obesity. (Doc. No. 3 at 10). Bible hypothesizes that a medical professional will have to repeatedly, and possibly unsuccessfully, try to gain access to a vein. To succeed, however, Bible must show that he will experience more than "any minor pain involved in multiple attempts to find an adequate vein . . . ." *Raby v. Livingston*, 600 F.3d 552, 558 (5th Cir. 2010).

---

[8]     The discussion above relates to Bible's first two claims, but also serves as the basis for finding no relief on any issue.

Bible bases his arguments that he will experience a constitutionally unacceptable amount of pain during execution primarily on reports prepared by two experts. On May 22, 2018, licensed physician assistant Mario M. Celis conducted a physical examination of Bible. (Dkt. 1, Ex. B). Celis reports a host of medical concerns experienced by Bible. With most relevance to the matters now before the Court, Celis says:

> Bible reports that recently it has become very difficult to do blood draws for laboratory studies on him. Obtaining blood samples from Mr. Bible, which normally is much easier than establishing an IV, requires multiple repeated attempts. Mr. Bible describes these attempts as "very painful." Blood draws are being done from the top of Mr. Bible's right hand only; all other sites are inaccessible as per patient's report. He does receive blood tests for glucose, but that does not require a needle insertion into a blood vessel, only a finger prick anywhere that elicits a single drop of blood

(Doc. No. 1, Ex. B at 4). Elsewhere, Celis reports: "Blood draws are being done from the top of Mr. Bible's right hand only; all other sites are inaccessible as per patient's report. Mr. Bible describes these attempts as 'very painful.'" (Dkt. No. 1, Ex. B at 13). While Celis could not engage in traditional methods of rendering veins visible, such as by applying a warm compress, he opined that none of Bible's veins were visible or palpable, nor could they be made so. (Dkt. No. 1, Ex. B at 16). Celis provided a copy of his report to Bible's other expert, anesthesiologist Dr. Ashish Sinha.

Dr. Sinha did not examine Bible himself. Instead, Dr. Sinha based his opinions on Celis' report, Bible's medical history, and his own experience as an anesthesiologist. As a preliminary matter, Dr. Sinha discussed the various health concerns Bible now experiences: heart failure, coronary artery disease, chronic venous insufficiency, chronic obstructive pulmonary disease, Parkinson's disease, diabetes, hypertension, and other systemic diseases. Dr. Sinha notes that Bible's medical condition has deteriorated in the past few years, though he does not describe any condition that would seriously affect the effectuation of his execution that has arisen recently.

Of greatest import, Dr. Sinha opines that "attempting venous access on Mr. Bible would be difficult, if not impossible, even for a very experienced and highly educated medical professional." (Dkt. No. 1, Ex. A at 23). Aside from identifying various problems common to gaining venous access in elderly patients, Dr. Sinha says that "[t]here are no suitable sites for peripheral IV catheter on Mr. Bible because his veins are fragile, sclerotic, or are incapable of tolerating the flow and the gauge of catheter needed for execution procedure." (Dkt. No. 1, Ex. A at 24). Dr. Sinha says that, based on Celis' observations, no visible veins can be accessed in Bible's neck, groin, legs, and arms. Dr. Sinha observed small, fragile veins in Bible's hands in the photographs taken by Celis. Dr. Sinha, however, provided various reasons for which using those veins would be problematic: a tourniquet to help visualize veins in Bible should not be used because it would put him at risk for bleeding or blood clots; the small veins would likely not accommodate a larger catheter than that used in blood draws; and the introduction of pentobarbital is known to cause tissue damage. (Dkt. No. 1, Ex. A at 29-30). Thus, Dr. Sinha gives the opinion that "the chances of successful intravenous placement of an IV catheter of suitable gauge for an IV infusion in either the right or left hand would be extremely unlikely." (Dkt. No. 1, Ex. A at 31).

Dr. Sinha goes further, however, and says that "[m]erely attempting to establish IV access on Mr. Bible represents substantial risk of serious harm." (Dkt. No. 1, Ex. A at 31). Dr. Sinha expresses particular concerns about any repeated attempts to find a vein: "[t]he pain that Mr. Bible would experience from repeated needle punctures or 'probing' within a single needle puncture would be excruciating given how friable his skin is and how compromised his veins are." (Dkt. No. 1, Ex. A at 31). [9] Dr. Sinha also fears that the IV could blow or that the drugs

---

[9]     The Court notes that, as described by the defendants, Dr. Sinha "'gave his opinion in very absolute terms without the reserve in expression and caution in drawing conclusions usually associated with scientific opinion.'"

could flow into an improperly inserted area. Dr. Sinha expresses concern that an aborted attempt at execution may result in severe necrosis, a chemical burn, a hematoma, blood clots, infection, and other problems. Dr. Sinha also is concerned that laying down would cause Bible to gasp and prevent him from breathing properly. These factors, however, are only relevant if the execution is not successful. In the end, Dr. Sinha summarized: "it is my opinion, to a reasonable degree of medical certainty, that Mr. Bible will be subjected to a substantial risk of serious pain if TDCJ attempts to execute him as planned under the State's execution protocol. . . . Mr. Bible will suffer severe pain and needless suffering if TDCJ attempts to execute him using their lethal injection method." (Doc. No. 1, Ex. A at 44).

Before turning to the constitutional questions at issue in deciding whether to stay Bible's execution, the Court notes that Dr. Sinha's opinions are compromised somewhat by having not examined Bible, or possibly not having been given access to all information pertaining to his medical condition. For example, Dr. Sinha says that Bible is "confined to a wheelchair." (Dkt. No. 1, Ex. A at 1).[10] Bible's own pleadings, however, cite records stating that he "continues to use a walker for ambulation." (Dkt. No. 12 at 11). The defendants show that Bible has been given a pass for a walker "to be used in transporting short distances and the wheelchair was to be used for longer distances." (Dkt. No. 11 at 24). Bible even took a walker with him for Celis' examination. (Dkt. No. 1, Ex. B at 2). As another example, Dr. Sinha expresses concern that if Bible lays on the gurney for a prolonged period of time he will experience complications such as

(Dkt. No. 11 at 22) (quoting *In re Ohio Execution Protocol Litigation*, 2017 WL 5020138, at *9 n. 11 (S.D. Ohio, 2017)). Dr. Sinha's report repeatedly employs exaggerated, emotional, and conclusive language that does not give the impression of detached, impartial analysis.

[10] Bible repeatedly says that he is "confined" to a wheelchair. (Dkt. No. 1 at v, 5, 11, 13, 16, 20). The defendants explain that they have executed an offender who used a wheelchair who was pronounced dead within eleven minutes and without apparent problem. (Dkt. No. 11 at 21). Bible has not shown that any constitutional violation occurred in that process.

difficulty breathing.  The defendants argue that, as Bible "must necessarily sleep each night," his allegations about being unable to breathe while laying on the gurney lack any credibility.  (Dkt. No. 11 at 23).  Dr. Sinha has not said that Bible sleeps in his wheelchair or otherwise never lies down.  The report by Bible's other expert, in fact, mentions that Bible "rest[s] in bed . . . ."  (Dkt. No. 1, Ex. B, at 3).  Bible did not have Dr. Sinha perform a physical examination, but instead brought this lawsuit in a dilatory manner which required him to base his conclusions on someone else's observations.

The defendants do not provide any evidence, medical or otherwise, to contradict Bible's argument that he will experience pain during execution that violates the Eighth Amendment. The burden at this stage, however, is on Bible.  *See Nken*, 556 U.S. at 433-34;  *PCI Transp., Inc. v. Fort Worth & Western R. Co.*, 418 F.3d 535, 546 (5th Cir. 2005).  In this instance, Bible's burden is premised by the requirement that he show a substantial, objectively intolerable risk of serious harm and that the circumstances are sure or very likely to cause needless suffering. *Glossip*, 135 S. Ct. at 2737; *Baze*, 553 U.S. at 50.  With that burden, no preliminary injunction is necessary because Bible has not shown that (1) repeated, even unsuccessful, efforts to find a vein fall within the category of issues prohibited as cruel and unusual punishment and (2) any injury will occur, if a vein found, is more than speculative.

The defendants strongly argue that Bible has, even in the recent past had his blood drawn by medical professionals.  Bible makes no argument that those blood draws were unsuccessful or caused pain "result[ing] in serious documented complications of a constitutional magnitude . . . ."  (Dkt. No. 11 at 23).  Bible, however, disputes whether the veins used to draw blood could handle the IV access, and argues that TDCJ will otherwise be unable to access a vein.  The defendants counter that "[w]hile the Defendant agree that any such probing may indeed be

unpleasant, the need for such probing is speculative and, even if it did occur, it would not cause sufficiently severe pain as to implicate the Eighth Amendment." (Dkt. No. 11 at 30). Dr. Sinha's expectations, while certainly laudable in the therapeutic context, do not necessarily provide clear insight in an Eighth Amendment challenge.[11]

Any pain experienced by IV insertion in the top of Bible's hand, or by repeated attempts to find a vein elsewhere, hardly matches "wanton exposure to 'objectively intolerable risk,'" but instead involves "the possibility of pain." *Baze*, 553 U.S. at 61-62 (quoting *Farmer v. Brennan*, 511 U.S. 825, 846 (1970)). Repeated attempts to secure a vein is fundamentally different from "a hypothetical situation" involving "a series of abortive attempts at electrocution." *Baze*, 553 U.S. at 50. Bible has not described how attempted IV insertion would create pain that, in and of itself, would violate Constitutional expectations. Such pain is common to many, many individuals experiencing medical procedures every day. The Fifth Circuit has already commented that no constitutional problem arises from "any minor pain involved in multiple attempts to find an adequate vein . . . ." *Raby*, 600 F.3d at 558. And, importantly, the Supreme Court has clearly held that "[s]ome risk of pain is inherent in any method of execution—no matter how humane—if only from the prospect of error in following the required procedure." *Baze*, 553 U.S. at 47.

---

[11] As another court observed:

> Dr. Sinha's [and another expert's] opinions were strongly conditioned by their professions, caring for persons undergoing painful and often complicated medical procedures, and thus less credible when applied to the execution context. If they do not keep their patients sufficiently anesthetized, pain will result which may disrupt the procedure. Their professionalism, coupled with the compassion most people feel for others in pain, leads them to judge what should be done in the execution chamber by what would be done in an operating room. But while surgeries should be pain-free, there is no constitutional requirement that executions be painless. . . . The goal of the anesthetist and anesthesiologist is to make patients unconscious, unaware, and insensate to pain—which is properly described as being in a state of General Anesthesia. But the Eighth Amendment does not require General Anesthesia before an execution.

*In re Ohio Execution Protocol Litigation*, 2017 WL 5020138, at *17 (S.D. Ohio 2017)

With that expectation, Bible has not demonstrated likelihood of success in showing that the execution protocol is sure or very likely to cause severe pain. The defendants characterize the core of Bible's as-applied challenge as "speculative" and based on a hypothetical "isolated incident" that does not show a "substantial risk of severe pain." (Dkt. No. 11 at 21) The defendants argue persuasively that "even accepting Bible's arguments" that "IV insertions into his visible small veins and the subsequent injection of pentobarbital would likely result in complications," any pain or problems would only result in "an isolated mishap that, while regrettable would not result in an Eighth Amendment violation." (Dkt. No. 11 at 23) (quotation omitted). The State of Texas has created a protocol that includes "the establishment of a primary and backup IV and the presence of personnel to monitor an inmate" which will "help in significantly reducing the risk that an execution protocol will violate the Eighth Amendment." *Glossip*, 135 S. Ct. at 2742.

Dr. Sinha posits that the team will not be able to find a suitable vein. Yet that chance falls into the category of hypothetical events of which the Supreme Court has stated that "an isolated mishap alone does not give rise to an Eighth Amendment violation." *Baze*, 553 U.S. at 47. The Fifth Circuit has reiterated that "the possibility of 'botched executions' . . . is just the kind of 'isolated mishap' that is not cognizable via a method-of-execution claim." *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017) (quoting *Baze*, 553 U.S. at 50). Bible relies on "entirely on hypothetical and speculative harms that, if they were to occur, would only result from isolated mishaps." *Zink v. Lombardi*, 783 F.3d 1089, 1099 (8th Cir 2015). "[A]n accident, with no suggestion of malevolence" will not give rise to an Eighth Amendment violation. *Baze*, 553 U.S. at 50.

If the medical professional cannot access a vein, Bible describes a series of events that may transpire. The medical professional may need to insert the needle in a small vein, Bible's veins may lack the integrity to withstand the IV causing them to blow, the process may leave him on the gurney for a significant amount of time which will cause breathing problems. All these events, however, are speculative and wholly dependent on the medical expert being unable to gain venous access easily. The other possible complications Bible described after the injection begins are likewise speculative and hypothetical.

In the end, the Constitution does not guarantee a painless death. *See Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016) ("[T]he Eighth Amendment does not require that execution be painless[.]"). "Some risk of pain is inherent" in any execution process, and "the Constitution does not demand the avoidance of all risk of pain [.]" *Baze*, 553 U.S. at 47. Bible surely shows that his execution will result in discomfort and some level of pain. The pain he describes, however, does not rise to the level requiring this Court to take the drastic step of intruding into the execution process. The risks posed by Bible are too speculative to warrant a stay of execution.

**B.    Alternative Methods of Execution**

In addition to identifying a sure risk that will cause needless suffering, the Supreme Court requires a plaintiff to "identify an alternative that is 'feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain.'" *Glossip*, 135 S. Ct. at 2737 (quoting *Baze*, 553 U.S. at 52). Bible argues that a plaintiff should not shoulder the requirement of providing an alternative in a case raising an as-applied challenge to the execution method. The Supreme Court is currently considering whether the Eighth Amendment requires an inmate to prove an adequate alternative method of execution when raising an as-applied challenge to the

State's proposed method of execution. *Bucklew v. Precythe*, 2018 WL 1400413 (2018). Bible nonetheless proposes that, instead of executing him by an intravenous method, the State could use either the firing squad or inert gas asphyxiation by nitrogen hypoxia.

Even if the second prong of the *Glossip/Baze* analysis does not apply, Bible has not met the first requirement by showing that he would likely suffer severe pain if executed using Texas' protocol. However, if Bible must prove an alternative method, neither the firing squad nor nitrogen hypoxia is feasible or readily implemented. Texas law and protocol allow for the State to use only one method of execution: lethal injection. The execution warrant specifies that Texas will execute Bible by lethal injection. Bible proposes alternative methods of execution that are unavailable under Texas law. Texas may change the substance it uses for lethal injection without legislative enactment, but switching to either of Bible's proposed alternatives would require new statutory law and the formulation of new protocol. Bible's proposed alternatives are neither feasible nor readily implemented. *See Boyd v. Warden, Holman Correctional Facility*, 856 F.3d 853, 868 (11th Cir. 2017); *Arthur v. Comm'r, Ala. Dep't of Corr.*, 840 F.3d 1268 (11th Cir. 2016).

### C.     Conclusion of Eighth Amendment Arguments

Bible has not shown that he has met the necessary factors for a stay, preliminary injunction, or temporary restraining order. Bible argues that he will be irreparable injured without a stay, but his arguments are not conclusive. Medical evidence suggests that the execution team may have difficulty finding a vein, but the pain he will experience as a result of multiple attempts to gain venous access does not rise to a level condemned by the Constitution. Bible's concerns if the team effectively finds a vein are speculative. Bible has not shown any certainty of constitutionally meaningful injury. The public interest lies in the effectuation of an

otherwise valid sentence, but only if it complies with constitutional expectations. Bible's, however, hobbled the ability to address his concerns fully, thus disentitling himself to equitable relief, by choosing only to litigate his concerns nineteen days before his execution.

Most importantly, Bible has not made a strong showing that he will succeed on the merits. Bible's arguments presuppose a painless execution, something the Constitution does not guarantee. Even if Bible had not delayed in bringing his lawsuit, he has not shown that the Court should issue a stay of execution, preliminary injunction, or temporary restraining order.

The Court will not stay Bible's execution based on his Eighth Amendment claims.

## II.    Deliberate Indifference

Bible seeks prospective injunctive relief on his argument that Texas prison officials have been deliberately indifferent to circumstances that may result during the execution process that could result in an Eighth Amendment violation. Bible first argues that past actions by TDCJ have created a situation that has increased the possibility that he will experience pain: "Inadequate provision of medical care by TDCJ has contributed to the severe and deteriorating medical conditions that will render Mr. Bible's execution unduly painful." (Dkt. No. 1 at 78). Bible also claims that TDCJ has been deliberately indifferent by not taking reasonable steps to facilitate his execution in a constitutional manner. These steps include conducting an adequate physical examination, making the execution chamber wheelchair accessible, anticipating how to transfer Bible to the gurney, making contingency plans in the event he experiences pain at the IV insertion, arranging to stabilize his arms so that the shaking from his Parkinson's disease would not interfere with the execution, training the execution team in the unique circumstances of his execution, and ensuring the presence of medical personnel if medical assistance is necessary.

Prison officials may violate an inmate's Eighth Amendment rights by acting with deliberate indifference to his serious medical needs. A prison official acts with deliberate indifference only if "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "To prevail on a claim for deliberate indifference, the plaintiff must show that a federal actor denied him treatment, ignored his complaints, knowingly treated him incorrectly, or otherwise evidenced a wanton disregard for his serious medical needs." *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018).

The defendants argue that "[t]his claim is rebutted by Bible's own pleading, which document the time and energy that TDCJ has spent treating Bible's medical conditions." (Dkt. No. 11 at 27). Nothing in this claim, in and of itself, would preclude the State from executing Bible's death sentence. The greater portions of this argument involve hypotheticals, some of which are premised on suspect facts, such as that Bible is confined to a wheelchair even though the prison system has issued him a walker. Much of this claim runs afoul of the statute of limitations, because the concerns he raises about the Texas protocol could have been brought much earlier. And, importantly, this Court possesses the authority to enter an injunction to prevent an Eighth Amendment violation, but cannot "micromanage state prisons." *Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004). As discussed above, Bible has not shown a significant probability of success on the merits of his Eight Amendment claims. "Injunctive relief is inappropriate when sought to prevent injury that is speculative at best." *Kirby v. Johnson*, 243 F. App'x 877, 880 (5th Cir. 2007). The Court finds no basis to grant a stay, an injunction, or a temporary restraining order based on Bible's third claim.

### III.    Access to Counsel

Because counsel will not be at his side when the TDCJ begins the lethal injection process, Bible contends that Texas protocol violates his right to access the courts and to petition for the redress of grievances.  Texas's execution protocol says that "[t]he offender may have visits with . . . his attorney(s) on the day of execution at the Huntsville Unit; however, the Huntsville Unit Warden must approve all visits." (Dkt. No. 1, Ex. C at 7).  The protocol, however, does not allow his attorney to be present as the IV is inserted, which leads to Bible's complaint that Texas's lethal injection protocol unconstitutionally limits communication with counsel. Bible believes that he has a right to communicate with attorneys once in the execution chamber, apparently so that they could commence litigation about aspects of the execution process.  Further, Bible says that the Constitution guarantees his attorney access to a telephone to "advocate on his behalf in court."  (Dkt. No. 1 at 82).

Texas adopted its lethal-injection protocol in 2008. The Fifth Circuit has held that the 2008 protocol does not violate an inmate's right to be free of cruel and unusual punishment.  *See Raby v. Livingston*, 600 F.3d 552, 562 (5th Cir. 2010).  Texas revised its execution protocol in 2012, but without any change to its core procedures.  *See Trottie v. Livingston*, 766 F.3d 450, 453 (5th Cir. 2014).  The procedure Texas will use to execute Bible, including those provisions allegedly impeding his communication with counsel, have been in place since at least 2008.  *See Whitaker v. Livingston*, 2016 WL 3199532, at *5 (S.D. Tex. 2016).  A two-year limitations period exists for the relevant portions of Texas' protocol.  *See Whitaker v. Collier*, 862 F.3d 490, 495 (5th Cir. 2017).  The Fifth Circuit has found that similar claims are subject to the statute of limitations.  *See id*.  Because Bible could have raised this claim much earlier, the Court finds that it is time barred.

In the alternative, Bible has not made a strong showing that he is likely to succeed on the merits or otherwise met the requirements for a stay of execution. The First Amendment protects a "constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right of access is not "an abstract, freestanding right," but exists to vindicate other rights. *Lewis v. Casey*, 518 U.S. 343, 354 (1996). Other courts have found no "binding precedent suggesting that [a State's] policy prohibiting execution witnesses from having cell phone or landline access infringes on the First or Eighth Amendments." *Arthur v. Commissioner, Alabama Department of Corrections*, 680 F. App'x 894, 911 (11th Cir. 2017); *see also Grayson v. Warden*, 672 F. App'x 956, 966 (11th Cir. 2016). The Fifth Circuit has refused to stay an execution based on similar arguments. *Wood v. Collier*, 836 F.3d 534, 537 (5th Cir. 2016).

Importantly, as the Court discussed above, Bible has not alleged a sufficiently imminent underlying Eighth Amendment injury that would give rise to an access-to-courts violation. The Court finds no basis on which to stay Bible's execution based on his access-to-courts claim.

## CONCLUSION

Bible delayed unreasonably in bringing this lawsuit, which provides an independent basis for dismissal. Bible has not met the demanding standard for a stay of execution, a preliminary injunction, or a temporary restraining order. Because this lawsuit cannot proceed without a stay of Bible's execution date, dismissal of the action is warranted. For the reasons described above, the Court **ORDERS** as follows:

1. Bible's motion for a stay of execution, temporary restraining order, or preliminary injunction is **DENIED**. (Dkt. No. 3).

2. The pending motion for discovery is **DENIED**. (Dkt. No. 8).

3. The defendants' motion to seal Bible's medical records is **GRANTED**. (Dkt. No. 9).

4.      This case is **DISMISSED WITH PREJUDICE**.

5.      Bible may proceed *in forma pauperis* in any appeal in this case.

6.      All other requests for relief are **DENIED**.

It is so ORDERED.

SIGNED on this 21st day of June, 2018.

_____
Kenneth M. Hoyt
United States District Judge